UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ENRIQUE ZAYAS,

                               Petitioner,

            -against-

ROBERT ERCOLE, SUPERINTENDENT,
GREEN HAVEN CORRECTIONAL
FACILITY,

                              Respondent.
-----------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

**08-CV-1037 (CBA)**

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

On March 3, 2008, *pro se* petitioner Enrique Zayas ("petitioner") filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2001 Queens County conviction for burglary, criminal mischief, possession of burglar tools, and resisting arrest. See Pet. for Writ of Habeas Corpus (March 3, 2008) ("Pet."), ECF Docket Entry ("D.E") #1. Petitioner contends that: (1) trial counsel was ineffective by virtue of his failure to move to suppress petitioner's pretrial statement to detectives and to object to the prosecutor's leading questions; (2) petitioner was improperly adjudicated a persistent violent felony offender; and (3) he was deprived of the effective assistance of appellate counsel by virtue of appellate counsel's failure to raise on appeal an ineffective assistance of trial counsel claim based upon trial counsel's omission of a challenge to the court's use of petitioner's 1991 conviction to enhance petitioner's sentence in this case. See Pet., App. ¶ C.

On July 14, 2009, the Honorable Carol B. Amon referred the petition to the undersigned magistrate judge for a report and recommendation. For the reasons that follow, this Court recommends that the petition be denied.

## BACKGROUND

Petitioner's conviction arises out of a daytime burglary at 42-02 65th Place, Woodside, New York, on June 14, 2000. <u>See</u> Trial Tr. at 211, 215. Daniel Sosa ("Daniel"), a sixteen-year-old boy, was home alone at the time. <u>See id.</u> at 215. Somewhere between 2:00 and 2:15 p.m., Daniel heard a knock at the door, looked through the peephole, and saw a stranger -- whom he identified in court as petitioner -- with his ear to the door. <u>See id.</u> at 220-22. Daniel did not respond to the knock. <u>See id</u>. Soon after, petitioner started ramming the door with his shoulder and Daniel called 911. <u>See id.</u> at 223. During the 911 call, Daniel first described the individual he saw through the peephole as a black male wearing a black shirt, but then changed his description to a male Hispanic. <u>See id.</u> at 250, 267. At trial, Daniel described the individual as an Hispanic male, wearing a tan shirt, <u>see id</u>. at 220, a description consistent with petitioner's appearance on the day in question. <u>See id.</u> at 330. Daniel's explanation for the change in description was that he was scared when he first called 911. <u>See id.</u> at 250.

Two or three minutes after making the 911 call, Daniel heard a "jimmying sound" coming from the front door. Upon investigation, he discovered damage to the door, but the stranger had left. <u>See id.</u> at 225-26. A few minutes later, Daniel again heard the "jimmying sound." <u>See id.</u> at 227. He then hid in his sister's bedroom, where he watched, from behind a partially closed door, as petitioner entered the apartment. <u>See id.</u> at 227-28. When the police arrived, they found petitioner in the apartment, with his hands in a dresser drawer in Daniel's mother's bedroom. <u>See id.</u> at 233-34, 302, 304. The police also found a red screwdriver outside the door, and noticed damage to the door. <u>See id.</u> at 236-38, 243-44, 301-02, 335.

After a short exchange with the police, during which petitioner claimed he lived in the apartment, petitioner tried to escape.  See id. at 238-42, 307.  The police struggled violently with petitioner before subduing him.  See id. at 240-42, 307-11, 360.  During the struggle, petitioner fell and cut his head on a mirror, and defecated in his pants after being punched in the stomach.  See id. at 316-18.  Once in custody, petitioner was taken to the hospital, where he received stitches to his forehead.  See id. at 313-14.  At 8:45 p.m. that same day, after being released from the hospital, petitioner made a taped statement to detectives from the Queens North Inspection Unit at the 108th Precinct, who were investigating petitioner's allegation that the arresting officers had used excessive force.  See June 14 Interview.[1]

A Queens County Grand Jury indicted petitioner for  Burglary in the Second Degree, N.Y. Penal Law § 140.25(2), Criminal Mischief in the Third Degree, N.Y. Penal Law § 145.05, Possession of Burglar Tools, N.Y. Penal Law § 140.35, and Resisting Arrest, N.Y. Penal Law § 205.30.

Prior to jury selection, petitioner's trial counsel renewed his earlier request for a Huntley hearing and suppression of petitioner's taped statement to the detectives,[2] on the ground that petitioner had been assured, before making the statement, that it would not be "used against him in any proceeding, neither on direct or on cross-examination."  See Trial

_____

[1]  The transcript of the interview is included as Exhibit A to Appellant's Brief, which in turn is attached as Exhibit A to Respondent's Declaration in Response to Petition ("Resp't Decl."), D.E. #9-1. In addition, this Court has requested and reviewed a copy of the audiotape of the interview.  See Letter providing Court with copy of audiotape (Oct. 8, 2009), D.E. #19.

[2]  A Huntley hearing is held to determine the admissibility of statements made to the police. See People v.  Huntley, 15 N.Y.2d 721 (1965).

Tr. at 29-30.[3]  Because the prosecution had failed to timely serve the defense with the requisite

notice of its intent to offer the June 14, 2000 statement into evidence, see N.Y. Crim. Proc.

Law § 710.30, the recorded statement could not in any event be used in the prosecution's case-

in-chief.  See Trial Tr. at 26.  Accordingly, consistent with an earlier judicial ruling in

response to an omnibus pretrial motion filed by the defense, the trial court denied as moot

petitioner's request for a Huntley hearing, and held that, since the statement was not being

offered in the prosecution's case-in-chief, he was not entitled to the hearing as a matter of law.

See id. at 30-33.  The statement could, however, be used for impeachment purposes.  See id.

at 27, 378-79, 383-92, 397-400.

Petitioner proceeded to trial before Justice Timothy J. Flaherty and a jury on March 19,

2001.  See id. at 22.  Trial counsel "advised [petitioner] for strategic reasons and legal reasons

not to take the witness stand, but he [] insist[ed]." Id. at 356.  Concerned with inconsistencies

in petitioner's account, trial counsel requested, and was granted, permission for petitioner to

testify in narrative form.  See id. at 357.  Petitioner then testified that, on the day in question,

he had gone to the apartment building with a man he called Negro, who owed him money.  See

id. at 358-59, 375.  According to petitioner, Negro said he lived on the third floor and would

return with the money.  See id. at 358-59.  Petitioner testified that, after Negro failed to

---

[3]  This claim is belied by the audiotape and corresponding transcript, which reflect that in the
course of being advised of his rights, petitioner was expressly told that "anything you do or say
may be used against you in a court of law."  See June 14 Interview at 2-3.  Petitioner indicated
that he understood and that he "would like [his] lawyer present if possible." See id. at 2.  After
the detectives asked clarifying questions as to whether petitioner wanted to proceed with the
interview without an attorney, petitioner agreed to speak with the detectives and made the
recorded statement describing the incident, without counsel present.  See id.

return, petitioner went to the third floor looking for him, found the apartment door open, and had just entered the apartment when the police arrived.  See id. at 359.  The prosecution proceeded to impeach petitioner's testimony with his prior criminal record and with inconsistencies in his June 14, 2000 recorded statement.  See id. at 363, 373-74, 378-80, 383-92, 397-400.  On March 22, 2001, the jury convicted petitioner on all counts.  See id. at 492-95.

On May 14, 2001, petitioner was sentenced as a persistent violent felony offender pursuant to Penal Law § 70.08, based on his two prior violent felony convictions.  See Sentencing Tr. ("Sent. Tr.") at 18-20, D.E. #18-1.  At sentencing, petitioner, who was still represented by trial counsel, addressed the court directly and objected to being adjudicated a persistent violent felony offender; specifically, he argued that in 1991, when he pled guilty to a burglary charge, he had not known that he was pleading to a violent felony.  See id. at 2-11.  Petitioner claimed that he had agreed to plead to a "nonviolent attempted burglary" charge, and that he had not been informed during the 1991 proceedings that he was pleading to a violent felony.  See id. at 3-4, 10.  After reviewing the prior plea and sentencing minutes, as well as certified copies of the dispositions of petitioner's two previous cases, the sentencing court overruled petitioner's objection, having satisfied itself that petitioner had twice been convicted of attempted burglary in the second degree, a violent felony.  See id. at 8, 11.  The court therefore sentenced him, as a persistent violent felony offender, to a term of sixteen years to life.  See id. at 18-19.

On appeal to the Appellate Division, Second Department, petitioner asserted three claims: (1) trial counsel was ineffective in failing to contest the voluntariness of the audiotaped

statement made to the Queens North detectives and in failing to request a jury charge on the voluntariness of the statement; (2) trial counsel was also ineffective in failing to object to the prosecutor's leading questions and to evidence of an uncharged crime, i.e., that petitioner had "head butted" one of the police officers during his arrest; and (3) petitioner was improperly adjudicated a persistent violent felony offender because: (a) the prosecution's predicate felony statement failed to include a statement to toll any portion of the more-than-ten-year period between his 1987 conviction and June 2000 arrest; and (b) petitioner had not been aware, during his 1991 prosecution, that his conviction was for a violent felony such that the conviction could be used to enhance future sentences. See Appellant's Brief at 6, 10-11, 16-20, Ex. A to Resp't Decl.

The Second Department affirmed petitioner's conviction. See People v. Zayas, 804 N.Y.S.2d 812 (2d Dep't 2005) (Ex. D to Resp't Decl.). Petitioner then applied to the New York Court of Appeals for leave to appeal, which request was denied on April 17, 2006. See People v. Zayas, 816 N.Y.S.2d 761 (2006) (Ex. G to Resp't Decl.).

On July 11, 2007, petitioner, proceeding *pro se*, filed a petition for a writ of error *coram nobis* with the Appellate Division, Second Department. See Defendant's Memorandum of Law In Support of His Error Coram Nobis Petition ("*Coram Nobis*"), Ex. N to Resp't Decl. Therein, petitioner claimed that he had been deprived of effective assistance of appellate counsel in that his appellate attorney, in challenging trial counsel's effectiveness, had failed to fault trial counsel for not arguing that his 1991 sentence was illegal and could not be used as a predicate for sentencing petitioner as a persistent violent felony offender. See id. at 3-4. Specifically, petitioner argued that his 1991 conviction was for attempted burglary in the

second degree, a violent felony under New York State law, see id.; N.Y. Penal Law § 70.02(c), but that he was improperly sentenced as a "second felony offender" and not as a "second violent felony offender." See *Coram Nobis* at 3-5. According to petitioner's *coram nobis* petition, because the 1991 sentence was illegal and could not be used to enhance his 2001 sentence, he should have been sentenced in this case as a *second* felony violent offender, and not as a persistent (third) violent felony offender. See id. at 3-5.

On October 30, 2007, citing Jones v. Barnes, 463 U.S. 745 (1983), the Second Department denied petitioner's motion for a writ of error *coram nobis*, holding that petitioner "failed to establish that he was denied effective assistance of appellate counsel." See People v. Zayas, 843 N.Y.S.2d 835 (2d Dep't 2007) (Ex. R to Resp't Decl.). Petitioner then applied for and, on February 25, 2008, was denied leave to appeal to the New York Court of Appeals. People v. Zayas, 854 N.Y.S.2d 335 (2008) (Ex. U to Resp't Decl.).

Petitioner timely filed this petition for a writ of habeas corpus on March 3, 2008,[4] asserting three claims: (1) trial counsel was ineffective in failing to move to suppress his pretrial statement and to object to the prosecutor's leading questions; (2) petitioner was improperly adjudicated a persistent violent felony offender; and (3) appellate counsel was ineffective in failing to raise on direct appeal an ineffective assistance of trial counsel claim predicated upon trial counsel's failure to argue that petitioner's 1991 sentence was illegal and could not be used to enhance his sentence in the instant case. See Pet., App. ¶ C.

---

[4] Respondent concedes, as it must, that this petition is timely. See Mem. in Resp. to Pet. ("Resp't Mem.") at 9, D.E. #8.

## DISCUSSION

### I. Exhaustion of Claims

In order to obtain habeas review, petitioner "must first have given the state courts a fair opportunity to pass upon his federal claim." Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982). Respondent contends that the petition includes both exhausted and unexhausted claims. See Resp't Mem. at 10-13. However, since the only unexhausted claim presented by petitioner is procedurally defaulted, the petition should be deemed exhausted.

Respondent concedes that petitioner exhausted his ineffective assistance of trial counsel claim by raising it on direct appeal to the Appellate Division and then seeking leave to appeal to the New York Court of Appeals. See Resp't Mem. at 10. Respondent also concedes that petitioner exhausted (at least one aspect of) his ineffective assistance of appellate counsel claim by raising it in his *coram nobis* petition, and, when that petition was denied, by seeking leave to appeal pursuant to section 450.90(1) of New York's Criminal Procedure Law. See Resp't Mem. at 12.[5]

_____

[5] Respondent construes petitioner's ineffective assistance of appellate counsel claim as predicated on appellate counsel's failure to challenge trial counsel's effectiveness in not objecting on three grounds to petitioner's adjudication as a persistent violent offender: (1) the prosecutor's failure to file the necessary "tolling" statement; (2) petitioner's unawareness, in 1991, that he was pleading to a violent felony; and (3) the illegality of the 1991 sentence. See Resp't Mem. at 12-13. However, a fair reading of petitioner's filings makes clear that his pending claim of ineffective assistance of appellate counsel, which, in his habeas petition, he describes in terms identical to his description of the issue raised in his *coram nobis* petition, compare Pet., App. ¶ C(3) with id. App. ¶ B(1), does not seek to raise new allegations of ineffective assistance of appellate counsel. This reading of the petition is confirmed by petitioner's Memorandum of Law in Support of His Habeas Corpus Petition ("Pet. Mem."), D.E. #16, which argues that appellate counsel was ineffective in failing to challenge trial counsel's effectiveness based solely on the latter's failure to argue the illegality of petitioner's

(continued...)

When generously construed in light of petitioner's state court filings, the second claim advanced in the habeas petition -- i.e., that petitioner was improperly adjudicated a persistent violent felony offender -- consists of three distinct arguments, two of which were raised on direct appeal, and a third that is procedurally defaulted: (1) that the prosecutor violated state law by failing to file a predicate felony statement alleging that the more than ten years that elapsed between petitioner's 1987 conviction and his arrest in 2000 was tolled by petitioner's incarceration ("tolling claim"); (2) that petitioner's 1991 plea was not knowing and voluntary ("voluntariness claim"); and (3) that his 1991 conviction was illegal because he was adjudicated a "second felony offender" when he was, in fact, a "second *violent* felony offender" ("1991 adjudication claim"). See Appellant's Brief at 6; *Coram Nobis* at 3-4; Pet. Mem. at 4-5.

Respondent concedes, as it must, that the tolling and voluntariness claims were both exhausted since they were raised on direct appeal. See Resp't Mem. at 10. The 1991 adjudication claim is unexhausted because it was never presented in state court, except as a predicate for petitioner's ineffective assistance of appellate counsel claim in his *coram nobis*

---

[5](...continued)
1991 sentence. See id. at 10-14; cf. *Coram Nobis* (challenging appellate counsel's effectiveness on that same single ground). Thus, petitioner's challenge to appellate counsel's performance is narrower than respondent assumes.

In any event, appellate counsel did in fact raise the tolling and voluntariness issues on appeal (albeit not as predicates for his challenge to trial counsel's effectiveness), see Appellant's Brief at 6, and "the force of [those] argument[s] would have been substantially diluted had appellate counsel also contended that trial counsel failed to preserve" those claims. Cruz v. Artuz, 96 Civ. 5209, 1997 WL 269591, at *5 (E.D.N.Y. Apr. 21, 1997), aff'd, 133 F.3d 906 (2d Cir. 1997). Significantly, the Second Department rejected the tolling and voluntariness arguments as meritless. See Zayas, 804 N.Y.S.2d at 812.

petition. See generally Appellant's Brief; *Coram Nobis*. The predicate claim, however, should be deemed exhausted because it is procedurally barred. Where, as here, a petitioner "no longer has 'remedies available' in the state courts under 28 U.S.C. § 2254(b), [the habeas court will] deem the claims exhausted," rather than requiring the petitioner to go through the futile process of seeking further state review. See Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994); see also McCabe v. Pennsylvania, 419 F.Supp.2d 692, 696 (E.D. Pa. 2006) ("If, however, state law clearly forecloses state court review of unexhausted claims, . . . [e]xhaustion is not possible, and sending the claims back to state court would therefore be futile.") (internal quotation marks and citations omitted). In that situation, "the same procedural defaults prevent [the habeas court] from addressing the merits of th[o]se claims." Bossett, 41 F.3d at 829; see Coleman v. Thompson, 501 U.S. 722, 735 n.1, 750 (1991); Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).

In this case, petitioner's direct appeal from his conviction did not include the 1991 adjudication claim. Petitioner can no longer obtain review of this claim by the New York Court of Appeals, because the time for seeking reconsideration of the denial of his leave application has expired, and New York limits criminal defendants to one application for leave to appeal. See N.Y. Court R. § 500.20(d); People v. Nesbitt, 621 N.Y.S.2d 867, 867 (1st Dep't 1995) ("Denial of the application for permission to appeal by the judge or justice first applied to is final and no new application may thereafter be made to any other judge or justice."). Petitioner is likewise procedurally barred from seeking collateral review of the 1991 adjudication claim in state court because it could have been raised on direct appeal. See N.Y. Crim. Proc. Law § 440.10(2)(c). Accordingly, this claim should be deemed exhausted

for purposes of federal habeas review.  See, e.g., Perez v. Greiner, 296 F.3d 123, 124 n.2 (2d Cir. 2002).

This same procedural default prevents habeas review of the merits of petitioner's 1991 adjudication claim.  Federal courts are precluded from reviewing claims that have been procedurally defaulted "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  See Coleman, 501 U.S. at 750.  To make the latter showing, a petitioner must establish that he is "actually innocent," see Aparicio, 269 F.3d at 90 -- a showing that petitioner has not made in this case. Although petitioner maintained his innocence at trial, see Trial Tr. at 357, 359-60, he cites no new evidence establishing his actual innocence.  See Murden v. Artuz, 497 F.3d 178, 194 (2d Cir. 2007) ("To demonstrate actual innocence a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. . . . Actual innocence requires not legal innocence but factual innocence.") (internal quotation marks and citations omitted).

The instant petition asserts a claim of ineffective assistance of appellate counsel predicated on counsel's failure to raise the 1991 adjudication claim on direct appeal.  See Pet., App. ¶ C(3).  Such a claim, if meritorious and exhausted, could constitute "cause" for procedural default, provided appellate counsel's assistance was "so ineffective as to violate the Federal Constitution."  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000).  However, for the reasons articulated infra Part II.C, petitioner cannot establish "cause and prejudice" for his procedural default of the underlying 1991 adjudication claim, and thus cannot satisfy the

demands of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which govern federal constitutional claims of ineffective assistance of appellate counsel. <u>See</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000). Therefore, the claim should be deemed exhausted and procedurally defaulted.

## II. Merits of the Habeas Petition

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a deferential standard of review for habeas corpus petitions filed by state prisoners. Pursuant to AEDPA, a federal court may grant habeas relief with respect to a federal claim adjudicated on the merits in state court only if that adjudication (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Kennaugh v. Miller</u>, 289 F.3d 36, 42 (2d Cir. 2002).

A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Williams v. Taylor,</u> 529 U.S. 362, 407 (2000). The relevant inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable," and not merely whether, in the independent judgment of the federal habeas court, the decision was erroneous or incorrect. <u>See</u> <u>id</u>. at 409-10.

Regarding the second prong of AEDPA, a state court's factual determinations are presumed to be correct. See 28 U.S.C. § 2254(e)(1). Such determinations are unreasonable only where the petitioner rebuts the presumption of correctness "by clear and convincing evidence." See id.

For the reasons that follow, under this deferential standard of review, petitioner cannot show, as to any of his claims, that the Appellate Division's holdings constitute "unreasonable applications" of clearly established Supreme Court precedent, nor can he show that the state court's factual findings were unreasonable.

## B. Petitioner's Claim of Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel was ineffective in failing to move to suppress his pretrial statement or to object to the prosecutor's leading questions. See Pet., App. ¶ C(1). On direct appeal, the Appellate Division rejected this argument on the merits, holding that petitioner was afforded effective assistance of trial counsel. See Zayas, 804 N.Y.S.2d at 812; see also Appellant's Brief at 6, 10-16. Properly analyzed under AEDPA's deferential standard, this holding was not contrary to clearly established Supreme Court precedent, specifically, Strickland and its progeny.

Pursuant to Strickland, a petitioner must satisfy a two-prong test in order to prevail on a federal constitutional claim of ineffective assistance of counsel: he must establish (1) that his counsel's representation fell below an objective standard of reasonableness measured by prevailing professional norms; and (2) that a reasonable probability exists that the outcome of the proceeding would have been different but for counsel's unprofessional performance. See Strickland, 466 U.S. at 688-93; see also United States v. Vegas, 27 F.3d 773, 777 (2d Cir.

-13-

1994). To establish that counsel's representation was ineffective, petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Strickland, 466 U.S. at 689. In connection with the prejudice prong of the inquiry, "[a] reasonable probability [of a different outcome] is a probability sufficient to undermine confidence in the outcome." Id. at 694. Neither of petitioner's two challenges to his trial counsel's effectiveness satisfies Strickland's dual prerequisites, particularly when viewed through the lens of AEDPA.

### 1. Failure to Move to Suppress Pretrial Statement

Before trial, defense counsel requested a Huntley hearing as to the admissibility of petitioner's June 14, 2000 recorded statement. See Trial Tr. 30-32. The defense request for a hearing was denied because the prosecution did not intend to offer petitioner's statement on its direct case. See id. at 30-32. On appeal, petitioner complained that trial counsel failed to contest the voluntariness of the June 14, 2000 recorded statement. See Appellant's Brief at 11. Even assuming that counsel's suppression motion did not include a voluntariness challenge,[6] any such omission did not deprive petitioner of his right to effective assistance of counsel. The failure to assert a plainly frivolous motion cannot constitute ineffective assistance. See United States v. Caputo, 808 F.2d 963, 967 (1987) (holding that "trial counsel . . . exercised sound professional discretion by declining to make a plainly frivolous suppression motion").

An examination of the appellate briefs filed in state court reveals that petitioner's challenge to the voluntariness of his pretrial statement is based on his claim that he was not

---

[6] The record in this case does not include counsel's motion papers and the transcript does not reflect the grounds asserted by counsel.

"functioning correctly and needed to recuperate" after being treated at the hospital; that the detectives allegedly assured petitioner that they would not use any statement he made for any purpose whatsoever; and that petitioner requested counsel at the outset of questioning. See Appellant's Brief at 12. In order to determine if a statement is voluntary, courts examine the "totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1992) (collecting cases). The burden of proving involuntariness of a post-arrest statement rests with the petitioner on habeas review. See Whitaker v. Meachum, 123 F.3d 714, 716 (2d Cir. 1997).

### a. Petitioner's Medical Condition

An accused's medical condition will render his statement involuntary only if his injuries are severe *and* the accused does not appear alert, responsive, or oriented. Compare Mincey v. Arizona, 437 U.S. 385, 398-99 (1978) (holding that defendant's statements were not voluntary when he was questioned in a hospital bed in the intensive care unit, encumbered by tubes and a breathing apparatus, the pain in his leg was unbearable, he was "depressed almost to the point of coma," he appeared confused, many of his responses were incoherent, and he expressed his desire not to be interrogated), with United States v. Khalil, 214 F.3d 111, 115, 121-22 (2d Cir. 2000) (holding that "although [defendant] was in pain, he was alert, seemed to understand the agent's questions, and gave responsive answers," such that statements by defendant, who had been shot in the leg and was being prepared for life-saving surgery, were voluntary); Pagan v. Keane, 984 F.2d 61, 63 (2d Cir. 1993) (holding that even though the hospitalized defendant had been given morphine three hours before questioning, had a high

fever, was required to wear an oxygen mask, and had at least five tubes or catheters connected to his body, his statements were voluntary because he was awake, alert, and oriented).

As amply demonstrated by a review of the audiotape of petitioner's interview on June 14, 2000, petitioner was alert and responsive throughout the questioning, and gave a lengthy and detailed account of his mistreatment by the police, as well as the events leading up to his arrest. See June 14 Interview. It is undisputed that petitioner was injured and was taken to the hospital before the interview. See Trial Tr. at 317-18, 360. Nevertheless, petitioner required only limited treatment at the hospital, where he received stitches for a laceration to the forehead, and he was back at the precinct making his statement at 8:45 p.m. that same evening. See June 14 Interview at 1. Petitioner conceded at trial that, during the interview, he never requested a break, or refused to answer a question, or asked for time to recuperate. See Trial Tr. at 390. Given the incontrovertible proof that petitioner was alert and responsive, and that his injuries were relatively minor, the record reflects that his medical condition did not render his statement involuntary, and that his trial attorney's failure to raise a baseless claim did not constitute constitutionally deficient representation. See Varela v. Marshall, 520 F.Supp.2d 471, 477 (S.D.N.Y. 2007) ("Although there was no Huntley hearing, and thus an examination into the voluntary nature of his statement was never made, everything in the record supports the conclusion that [petitioner's] statement was indeed voluntary.").[7]

---

[7] Petitioner's testimony at trial that he was knocked unconscious during his struggle with the police, see Trial Tr. at 360, was belied by his failure to mention his alleged loss of consciousness during either the June 14, 2000 interview or hospital visit. See id. at 390-93. In any event, even if fully credited, his claimed black-out would not render his subsequent statements involuntary. See United States v. Harper, 466 F.3d 634, 641, 643-44 (8th Cir. 2006) (holding that the fact that defendant was in an automobile accident, and suffered a
(continued...)

Moreover, even if petitioner had suffered severe injuries, his mental state would not become part of a voluntariness inquiry absent an "allegation that [the police] engaged in some type of coercion" or overreaching to exploit his medical condition and thereby secure a statement from him.  See United States v.  Salameh, 152 F.3d 88, 117 (2d Cir. 1998) (citing Colorado v. Connelly, 479 U.S. 157, 167 (1986) (holding that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment")).  Petitioner does not complain that the detectives conducting the June 14, 2000 interview -- who were investigating petitioner's excessive force allegations -- in any way coerced petitioner into speaking.

### b.  Petitioner's Challenge to the Miranda Warnings

In his challenge to trial counsel's effectiveness and the admissibility of his post-arrest statement, petitioner additionally argued on appeal that he had been told that his statements would not be used against him for any purposes.  See Appellant's Brief at 12.  "In certain circumstances, the [Supreme] Court has found affirmative misrepresentations by the police sufficient to invalidate a suspect's waiver of the Fifth Amendment privilege."  Colorado v. Spring, 479 U.S. 564, 576 n.8 (1987) (collecting cases).  Here, however, petitioner's claim is flatly contradicted by the audiotape of the June 14 interview, during which petitioner was expressly informed that he had the right to remain silent and that anything he said "may be used against [him] in a court of law."  See June 14 Interview at 1-3.  Petitioner confirmed, on

---

[7](...continued)
seizure and lost consciousness, did not render his subsequent statements involuntary, inasmuch as "he was alert and responsive" when questioned).

the tape, that he understood his rights.  See <u>id</u>.  Before jury selection, the trial court

understandably rejected petitioner's contrary assertion as incredible, <u>see</u> Trial Tr. at 29-30,[8]

and that finding was not "an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d).  Trial counsel's decision not to

challenge further the voluntariness of petitioner's statement was therefore reasonable, as it was

apparent that the judge would deny any motion predicated on petitioner's uncorroborated and

incredible claim as to the detectives' alleged assurances.  See <u>Lynn v. Bliden</u>, 443 F.3d 238,

249-50 (2d Cir. 2006) (where counsel is alleged to have been ineffective in failing to request a

suppression hearing, the petitioner must make a "showing of the likelihood of success at the

hearing.").

### c.  Petitioner's Request for Counsel

Petitioner's third and final reason for challenging the admission of his June 14, 2000

statement is based on his request for counsel at the outset of questioning.  This claim similarly

lacks merit.  As an initial matter, although trial counsel's request for a <u>Huntley</u> hearing is not

part of the record before this Court, it appears from subsequent proceedings that trial counsel

may in fact have raised this claim in requesting the hearing:  The court denied the hearing on

the ground may that the prosecution was "not going to be using [the June 14, 2000 statement]

---

[8]  When petitioner's counsel informed the court of his client's contention, the judge responded
"Yeah?  First of all, [petitioner] said he . . . never made a tape, and then the tape of his own
voice was [played for] him and now all of a sudden he recalls that, oh, yes, the tape was made,
but further recalls that certain promises were made to him. . . . We all have an idea whether or
not what he says is believable."  Trial Tr. at 29-30.

in [its] case in chief, [such that petitioner] was not entitled to a hearing under the law."[9]  See Trial Tr. at 30-31.  This ruling is consistent with a defense request for a Huntley hearing to suppress statements taken despite petitioner's pre-arraignment request for counsel.  See Oregon v. Hass, 420 U.S. 714, 722-24 (1975) (holding that pre-arraignment statements obtained in violation of a defendant's request for counsel, though inadmissible on the prosecution's case-in-chief, are admissible to impeach the defendant's testimony).  In light of the fact that petitioner's statement was not offered into evidence until petitioner took the stand, any failure to move to suppress the June 14, 2000 statement based on petitioner's pre-arraignment request for counsel could not have caused petitioner any legally cognizable prejudice.  Moreover, given the overwhelming evidence against petitioner, see Sent. Tr. at 18, "[t]here is nothing in the record to indicate that the jury would have reached a different conclusion if [petitioner's] statement had not been introduced."  Varela, 520 F.Supp.2d at 478.  Petitioner therefore cannot satisfy the prejudice prong of Strickland.  See Cox v. Herbert, 420 F.Supp.2d 144, 160 (W.D.N.Y. 2006).

In any event, petitioner's statement to the detectives that he "would like [his] lawyer present if possible"[10] was not an unequivocal request for counsel that would mandate the

---

[9]  As the prosecutor had failed to timely serve notice of its intent to offer the statement into evidence, pursuant to Criminal Procedure Law § 710.30, the statement could not be offered on the prosecution's case-in-chief.  See Trial Tr. at 26-27.

[10]     SERGEANT WILLIS: Now that I have advised you of the rights, are you willing to answer – of your rights, are you willing to answer questions?

PETITIONER: Well, I – I would like my lawyer present if possible.

(continued...)

termination of the interview.  Pursuant to Supreme Court precedent, if a "suspect's statement

is not an unambiguous or unequivocal request for counsel, the officers have no obligation to

stop questioning him."  <u>Davis v. United States</u>, 512 U.S. 452, 461-62 (1994) (holding that a

suspect's statement that "[m]aybe I should talk to a lawyer" was ambiguous).  Rather, the

detectives were entitled to ask follow-up questions to clarify petitioner's remark.  <u>See</u>

<u>Florentino v. Kelly</u>, No. 89-CV-2728 (LBS), 1989 WL 153055, at *3 (S.D.N.Y. Dec. 13,

1989) (holding that when a request for counsel is ambiguous, "clarifying questions are

permitted to determine whether the petitioner wanted to have a lawyer present before making

any statements.").  Since the follow-up questions were proper, petitioner's subsequent decision

to speak with the detectives without counsel present constituted a valid waiver of his right to

counsel.  <u>See</u> June 14 Interview at 3.

### 2.  Failure to Object to the Prosecutor's Leading Questions

Petitioner additionally faults trial counsel for failing to object to certain leading

questions by the prosecutor.  <u>See</u> Pet., App. ¶ C(1); Appellant's Brief at 17.  Specifically, he

complains that after playing a tape of Daniel's 911 call, and before asking Daniel why he made

---

[10](...continued)
> SERGEANT WILLIS: Okay.  So you don't want to answer any questions regarding to an incident that happened today?
>
> PETITIONER: Well, I – I –
>
> SERGEANT WILLIS: Or why you sustained injury to your, um, head?
>
> PETITIONER: Ehhh, I could say what – what – what happened.  I did go upstairs.

<u>See</u> June 14 Interview at 1-3.

certain statements on the tape, the prosecutor utilized leading questions to remind the jurors what was on the tape.[11]

Had counsel objected to these leading introductory questions, the prosecutor could simply have rephrased the questions, which, in any event, concerned undisputed facts captured on audiotape.  For this reason, counsel did not render constitutionally deficient assistance by opting not to interrupt this inquiry and thereby highlight the testimony.  See Quinones v. Miller, 01 Civ. 10752, 2003 WL 21276429, at *50 (S.D.N.Y. June 3, 2003) (collecting cases), adopted,  NO. 01 CIV.10752(WHP), 2005 WL 730171 (S.D.N.Y. Mar. 31, 2005), aff'd, 224 F.App'x 44 (2d Cir. 2007).  Moreover, there is no reasonable probability that the outcome of the proceedings would have been different had counsel objected.  See Solimany v. United States, No. 99-CV-0862E(F) (JTE), 2000 WL 1160457, at *2 (W.D.N.Y. Aug. 11,

---

[11]  Q: Daniel, was that your voice?
A: Yes.
Q: You indicated on that [tape] that it was a male Hispanic; is that correct?
A: Yes.
Q: When you were first asked that question, did you say black?
A: Yes.  I hesitated.
Q: Why?
A: I Just – I was just scared.
Q: You were scared?
A: Yes.
Q: Now, when you were describing what he was wearing, you stated that he was wearing a tan shirt; is that correct?
A: Yes.
Q: And did you also at first say it was a black shirt?
A: Yes.
Q: Why did you do that?
A: Scared also.

See Trial Tr. at 250.

2000) (holding that petitioner failed to establish either that "the conduct of his counsel fell below the standard of reasonably effective assistance" or that there was a "reasonable probability that the outcome of the case would have been different had there been objections to leading questions"); accord Flores v. Keane, 211 F.Supp.2d 426, 441 (S.D.N.Y. 2001) (noting that trial counsel's decision whether or not to object to leading questions is "evidently tactical" and should not be "second-guess[ed]" by the court). Thus, the Appellate Division did not act unreasonably in rejecting this Strickland challenge.

### 3. In the Aggregate, Trial Counsel Was Effective

Finally, even if trial counsel had erred in not moving for a hearing on the voluntariness of petitioner's June 14, 2000 statement, or in failing to object to leading questions, it is well settled that not every error or mistake made by counsel will constitute ineffective assistance. See Morris v. Garvin, No. 98-CV-4661(JG), 2000 WL 1692845, at *3 (E.D.N.Y. Oct. 10, 2000) ("Just as criminal defendants are not entitled to a perfect trial, only a fair one, they are not entitled to error-free, perfect representation."). The Supreme Court has directed courts to review "the totality of the evidence before the judge or jury," Strickland, 466 U.S. at 695, and any errors by counsel "must be considered in the 'aggregate,' rather than in isolation . . . ." Curry v. Burge, No. 03-CV-0901 (LAK) (AJP), 2004 WL 2601681, at *26 (S.D.N.Y. Nov. 17, 2004) (citations and quotations omitted); see Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

In this case, defense counsel actively conducted voir dire, and raised a Batson challenge to the prosecutor's use of peremptory challenges. See Trial Tr. at 105-18, 161-75, 179-81. In his opening statement, counsel emphasized the prosecutor's heavy burden and the lack of

physical evidence against petitioner.  See id. at 203-09.  On cross-examination of Daniel, the prosecution's primary witness, trial counsel ably attacked the credibility of Daniel's account, emphasizing Daniel's fearful state of mind, limited visibility from behind the door and through the peephole, and, in his 911 call, his description of the intruder as a black man.  See id. at 254-77.  Counsel also elicited testimony from Daniel as to the violent confrontation between the police and petitioner, including testimony that an officer punched petitioner while he was being held by two other officers, and that petitioner was bleeding heavily.  See id. at 270-73.

Trial counsel strongly advised petitioner not to testify.  After petitioner disregarded that advice and testified in his own defense, he was effectively impeached with his June 14, 2000 recorded statement.  See id. at 356, 378-80, 383-92, 397-400.  Had petitioner followed counsel's advice, his statement would not have been admitted.  See id. at 26-27.  Counsel also moved for a mistrial (albeit unsuccessfully) based on the prosecutor's repeated reference, during cross-examination, to the fact that petitioner was a convicted felon who had previously served time in prison.  See id. at 403-04.  At the conclusion of the evidence, counsel moved to dismiss all counts based on alleged insufficiency of the evidence.  See id. at 412-14.

In short, trial counsel made the most out of a weak case; after all, petitioner had been found in the victim's apartment with his hands in a dresser drawer and the victim-witness had observed the break-in from start to finish.  Accordingly, the state court acted reasonably in rejecting petitioner's Strickland challenge, which ignores counsel's overall performance.

### B.  Adjudication as Persistent Violent Felony Offender

Construed in light of his state court filings, petitioner's claim that he was improperly adjudicated a persistent violent felony offender consists of three distinct claims: (a) his tolling

claim, i.e., that the prosecutor violated state law by failing to include in his predicate felony statement any allegation that the more-than-ten-year period that elapsed between petitioner's 1987 conviction and his arrest in 2000 was tolled by petitioner's intervening incarceration; (b) his voluntariness claim, i.e., that petitioner's 1991 plea was not knowing and voluntary; and (c) his 1991 adjudication claim, i.e., that his 1991 conviction was illegal because he was adjudicated a "second felony offender" when he was, in fact, a "second *violent* felony offender." See Pet., App. ¶ C(2)-(3); Appellant's Brief at 18-20; *Coram Nobis* at 3-4.

## 1. Tolling Claim

Petitioner's claim that the prosecution failed to file the requisite tolling allegation along with the predicate felony statement asserts only a state law violation,[12] which is not cognizable on federal habeas corpus review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Knapp v. Leonardo, 46 F.3d 170, 180-81 (2d Cir. 1995); Ocasio v. Smith, 07 Civ. 2754, 2008 WL 110938, at *17 (S.D.N.Y. Jan. 8, 2008); Rodriguez v. Williamson, 06 Civ. 14306, 2007 WL 2274255, at *5 (S.D.N.Y. Aug. 2, 2007).[13]

## 2. Voluntariness Claim

Petitioner further alleges that his 1991 plea was not knowing and voluntary because he "was not informed [during the 1991 proceedings] that his conviction was for a violent felony for which he could face additional enhanced punishment in the future." See Appellant's Brief

---

[12] Petitioner does not dispute that the ten-year period was in fact tolled for long stretches of time while petitioner was incarcerated. See Resp't Mem. at 30 & n.10.

[13] In addition, for the reasons stated by respondent, the tolling claim was unpreserved and therefore procedurally barred from habeas review. See Resp't Mem. at 27-28.

at 19.  The Second Department rejected this claim, holding that "[t]he defendant's contention that he was wrongly sentenced is unpreserved for appellate review and, in any event, is without merit."  Zayas, 804 N.Y.S.2d at 813.

Where, as here, "a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not" subject to federal habeas review.  See Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 n.4 (2d Cir. 2000) (citing Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996)).  "Federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice."  Fama, 235 F.3d at 809.

Petitioner has made no showing that failure to consider his claims would result in a fundamental miscarriage of justice, inasmuch as he has not shown that he is "actually innocent."  See Aparicio, 269 F.3d at 90; *supra* page 11.

Nor has petitioner articulated any grounds to support a claim of cause and prejudice so as to excuse his procedural default.  Although petitioner has asserted ineffective assistance of trial counsel on other grounds, see Pet., App. ¶ C(1), a claim of ineffective assistance of counsel may establish cause and prejudice if and only if counsel's ineffectiveness was so extreme as to violate federal constitutional standards.  See Edwards, 529 U.S. at 451.  Since petitioner's trial counsel's performance was, in the aggregate, reasonable, see *supra* Part II.B.3, petitioner cannot establish cause for his failure to preserve the claim.  In any event, for the reasons that follow, petitioner's challenge to the voluntariness of his 1991 plea is meritless, particularly when measured against AEDPA's deferential standard of review.

For a guilty plea to be knowing and voluntary and thereby satisfy due process, the accused must be "fully aware of the direct consequences" of the plea.  See Brady v. United States, 397 U.S. 742, 755 (1970).  Direct consequences are those that are "definite, immediate, and largely automatic."  See United States v. U.S. Currency, 895 F.2d 908, 915-16 (2d Cir. 1990).  The accused need not, however, be informed of the collateral consequences of his plea.  See Lustyk v. Murray, 03-CV-6186L (JL), 2004 WL 1949473, at *2 (W.D.N.Y. Aug. 30, 2004) (collecting cases).

The alleged failure to inform petitioner in 1991 that his conviction was for a violent felony, and could subject him to sentencing enhancements upon any future convictions, did not violate due process or render his plea involuntary.  See United States v. Salerno,  66 F.3d 544, 550 (2d Cir. 1995).  ("That a defendant . . . may later commit another [ ] offense, the penalty for which would be enhanced as a result of the original offense, is certainly a foreseeable possibility.  But it is neither definite, immediate, nor largely automatic; hence, the defendant need not be told of this possible consequence in his original plea colloquy."); accord Alexander v. Ercole, 06 Civ. 3377, 2008 WL 365401, at *7 (E.D.N.Y. Feb. 11, 2008); Murden v. Artuz, 253 F.Supp.2d 376, 381 (E.D.N.Y. 2001), aff'd, 60 F.App'x 344, 345 (2d Cir. 2003).

Furthermore, even assuming *arguendo* that petitioner's 1991 plea was involuntary, he nevertheless could not challenge his current conviction on that ground.  As the Supreme Court has held:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be

> regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 403-04 (2001) (citation omitted); see also Neely v. Marshall, No. 07 Civ. 9267(SHS)(JCF), 2008 WL 2755830, at *8 (S.D.N.Y. July 14, 2008) (holding that, "[b]ecause the petitioner's prior sentences are now expired, his direct challenge to the constitutionality of the prior convictions is not cognizable in a federal habeas action"); Ocasio, 2008 WL 110938, at *17 (a prior sentence used to enhance a subsequent sentence may not be collaterally attacked on habeas unless it was obtained without *any* assistance of counsel).

Petitioner's 1991 sentence is no longer open to direct attack since the time to appeal the conviction has passed, see N.Y. Crim. Proc. Law § 460.10, and petitioner is precluded from seeking collateral review of the claim in state court because his voluntariness claim could have been raised on direct appeal. See id. § 440.10(2)(c). Accordingly, the 1991 conviction is regarded as conclusively valid pursuant to Lackawanna.

### 3. 1991 Adjudication Claim

Lastly, petitioner's claim that he was improperly sentenced as a persistent violent felony offender includes the argument that his 1991 conviction was illegal because he was adjudicated a "second felony offender" when he was, in fact, a "second *violent* felony offender." See *Coram Nobis* at 3-4. As discussed *supra* Part I, this claim is procedurally defaulted. Furthermore, this challenge asserts a violation of state law, and thus is not cognizable on federal habeas corpus review. See Estelle, 502 U.S. at 68. Even if it were reviewable, the

claim is meritless, as demonstrated in Part II.C below.

### C. Ineffective Assistance of Appellate Counsel

Complaining of trial counsel's failure to contest the sentencing court's use of his 1991 conviction for enhancement purposes, and appellate counsel's failure to challenge trial counsel's effectiveness on that basis, petitioner claims he was deprived of effective assistance of appellate counsel. See Pet., App. ¶ C(3). Federal constitutional claims of ineffective assistance of appellate counsel are governed by the same Strickland standards and considerations that apply to trial counsel. Thus, petitioner must satisfy a two-prong test in order to prevail on his ineffective assistance of appellate counsel claim: i.e., he must establish (1) that his counsel's representation fell below an objective standard of reasonableness measured by prevailing professional norms; and (2) that a reasonable probability exists that the outcome of the proceeding would have been different but for counsel's unprofessional performance. See Strickland, 466 U.S. at 688-93; Smith v. Robbins, 528 U.S. 259, 285 (2000); Forbes v. United States, 574 F.3d 101, 106 (2d Cir. 2009).

The Appellate Division's rejection of petitioner's Strickland challenge on *coram nobis*, with its citation to Jones v. Barnes, 463 U.S. 745 (1983), see Zayas, 843 N.Y.S.2d at 835, constitutes an adjudication on the merits, such that the claim must be reviewed under AEDPA's deferential standard. See 28 U.S.C. § 2254(d)(1). Accordingly, petitioner "must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, he must show that the [state court] applied Strickland to the facts of his case in an

objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 698-99 (2002).  Petitioner

cannot satisfy his heavy burden.

## 1.  Appellate Counsel's Representation Was Objectively Reasonable

Petitioner contends that as a matter of law, his 1991 conviction could not serve as a

predicate for his sentence as a persistent violent felony offender because, in 1991, he was

wrongly sentenced as a second felony offender rather than as a second *violent* felony offender.

See Pet. Mem. at 1-3.  Petitioner reasons that the lesser sentence imposed on him in 1991 was

illegal under New York State law and that, if his trial attorney in 2001 had challenged the prior

sentence, the sentencing court would have been obligated to disregard his 1991 conviction

entirely and to sentence him, as a second felony offender, to no more than seven years, as

opposed to the sentence he did receive -- sixteen years to life -- as a persistent (third) violent

felony offender. See id. at 1-2.

In support of this claim, petitioner relies primarily on the Third Department's decision

in People v. Boyer, 19 A.D.3d 804 (3d Dep't 2005), in which the court vacated the

defendant's adjudication as a persistent violent felony offender on similar grounds.[14]  There the

defendant had been sentenced as a second felony offender on a 1994 charge, when he should

have been sentenced as a second *violent* felony offender.  See id. at 805.  Following his arrest

on a subsequent charge, the defendant was sentenced, in 2001, as a persistent violent felony

---

[14]  Petitioner also cites factually distinguishable cases, such as Mask v. McGinnis, 28
F.Supp.2d 122 (S.D.N.Y. 1998) (holding that defense counsel had been ineffective during plea
negotiations in failing to recognize that petitioner was a second violent felony offender rather
than a persistent violent felony offender, as he had not been sentenced for one of his prior
offenses).

offender.  See id.  The county court then vacated the 1994 plea on the ground that the

defendant had been illegally sentenced, see id. at 805-06, and the Third Department ruled that

"[d]efendant's adjudication as a persistent felony offender must be vacated . . . inasmuch as a

lawful sentence for his 1994 conviction . . . was not imposed until after the crimes were

committed" in 2001.  See id. at 806.

Notwithstanding the decision in Boyer, petitioner cannot establish that his appellate

counsel was ineffective in failing to fault trial counsel for not advancing a Boyer argument.  "A

petitioner may establish constitutionally inadequate performance [of appellate counsel] only if

he shows that counsel omitted significant and obvious issues while pursuing issues that were

clearly and significantly weaker."  Bien v. Smith, 546 F.Supp.2d 26, 54 (E.D.N.Y. 2008).

Petitioner's claim that his 1991 adjudication as second felony offender was illegal, such that it

could not serve as a predicate for sentence enhancement, is far from obvious; indeed, it is

"meritless."  Bernardo v. Senkowski, No. 03 Civ. 394 (MHD), 2004 WL 1661099, at *13

(S.D.N.Y. July 23, 2004) (rejecting argument that sentencing court, in deeming petitioner to

be a predicate violent felon, was precluded from relying on prior attempted burglary conviction

for which petitioner had been sentenced below the statutory minimum).  Here, as in Bernardo,

"[p]etitioner's only complaint about the prior sentence is that it was too short.  Even if true,

that error was certainly not a violation of his rights, either constitutional or statutory."  Id.

Thus, "[t]here was ample reason for the appellate attorney not to press such an argument."  Id.

Significantly, Boyer was decided after petitioner's sentencing and appeal, and overlooks

contrary caselaw, including precedent from the Second Department, which decided petitioner's

appeal.  See People v. Herrar, 502 N.Y.S.2d 85 (2d Dep't 1986) (holding that "even though

[the defendant] had never been *sentenced as a second violent felony offender* (*see*, Penal Law § 70.04), he was properly sentenced as a persistent violent felony offender (*see*, Penal Law § 70.08 . . .)") (emphasis added); <u>see</u> <u>also</u> <u>People v. Morgan</u>, 568 N.Y.S.2d 788, 789 (1st Dep't 1991) (holding that a prior conviction could serve as a predicate, and that a hearing was unnecessary, where the challenge was not to the "constitutionality of his prior plea, but to the impropriety of his sentence.") (citation omitted); <u>People v. Flores</u>, 561 N.Y.S.2d 460 (1st Dep't 1990) (holding that "where a defendant is the beneficiary of an error [in sentencing], and no prejudice ensues to him, a vacatur of the sentence is not required."); <u>People v. Piantini</u>, 555 N.Y.S.2d 760, 761 (1st Dep't 1990) (holding that, where a challenge concerns only the sentencing on a predicate offense, the conviction remains valid and thus can be used as a predicate for sentence enhancement purposes). Moreover, <u>Boyer</u> ignores the plain language of the persistent violent felony offender statute, which requires only that a defendant convicted of a violent felony offense have been previously "subjected to two or more predicate violent felony convictions," as opposed to a requirement that he be previously adjudicated or sentenced as a second violent felony offender. See N.Y. Penal Law § 70.08(1)(a).

Accordingly, neither petitioner's trial counsel nor his appellate should be faulted for failing to anticipate the aberrational, counterintuitive holding in <u>Boyer</u> -- particularly in light of section 400.20(6) of New York's Criminal Procedure Law, which provides that a defendant may challenge the use of an earlier conviction to enhance a sentence only if he shows that the earlier conviction was obtained in violation of the United States Constitution. See N.Y. Crim. Proc. Law § 400.20(6). Thus, the <u>Boyer</u> claim is not one that all reasonable counsel would be or should have been expected to make.

Nor has petitioner shown that his appellate attorney, in failing to anticipate Boyer,

pursued issues that were clearly weaker. Appellate counsel raised two challenges to

petitioner's adjudication as a persistent violent felony offender: the tolling and voluntariness

claims discussed above. See Appellant's Brief at 10, 16-20; *supra* pages 24-27. Especially in

light of the fact that Boyer had not yet been decided, these arguments were not "clearly and

significantly weaker." Bien, 546 F.Supp.2d at 54.

### 2. Petitioner Was Not Prejudiced by Appellate Counsel's Omission

Even assuming that petitioner could establish that appellate counsel's performance fell

below an objective standard of reasonableness, habeas relief would nevertheless not be

warranted. In order to satisfy the prejudice prong of Strickland, petitioner must show that had

appellate counsel raised the Boyer argument, there is a reasonable probability that the outcome

of the case would have been different. See Strickland, 466 U.S. at 694 ("A reasonable

probability is a probability sufficient to undermine confidence in the outcome."). Petitioner

cannot make this showing.

Significantly, as described above, Boyer is contrary to the weight of authority in New

York, including controlling authority in the Second Department, and ignores the plain language

of the persistent violent felony offender statute. See *supra* page 30-31. Although petitioner

challenges his prior adjudication as a "second felony offender," he does not, for the most part,

contest the validity of his prior convictions[15] or deny that they were for violent felonies. See

*Coram Nobis* at 4. Thus, had the Boyer claim been presented, the state court would likely

---

[15]  The only exception is his baseless claim that he was not properly advised of the
consequences of his 1991 plea. See *supra* pages 24-27.

have ruled, consistent with the Second Department's decision in People v. Herrar, 502

N.Y.S.2d 85, that petitioner's valid 1991 *conviction* could be used as a predicate for

petitioner's adjudication as a persistent violent felony offender, whatever the validity of

petitioner's 1991 *sentence*.[16]   As petitioner has not shown that either the state trial court, or

reviewing court on appeal, would have reached the same conclusion as the Boyer court, he

cannot demonstrate a "probability sufficient to undermine confidence in the outcome."

Strickland, 466 U.S. at 694.  Petitioner cannot satisfy the prejudice prong of Strickland.

## CONCLUSION

For all of the foregoing reasons, this Court respectfully recommends that the habeas

petition be dismissed.

Any objections to the recommendations contained in this Report and Recommendation

must be filed with the Honorable Carol B. Amon on or before November 25, 2009.  Failure to

file objections in a timely manner may waive a right to appeal the District Court order.  See 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; Small v. Sec'y of Health & Human Servs., 892

F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to enter this Report and Recommendation into the ECF system,

and to mail a copy to petitioner at the following address:

---

[16]  Alternatively, had the claim been raised by trial counsel at sentencing, and had the court
found that the error required re-sentencing, the judge could have adjourned sentencing in the
instant matter until resolution of the re-sentencing on his 1991 conviction pursuant to New
York Criminal Procedure Law § 440.20.  Petitioner would then have been re-sentenced as a
second violent felony offender on the 1991 conviction, and subsequently sentenced as a
persistent *violent* felony offender in the instant matter.  Accordingly, petitioner would thus be
unable to establish prejudice within the meaning of Strickland.

Enrique Zayas
01-A-3084
Green Haven Correctional Facility
Stormville, NY 12582

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**November 9, 2009**

　　　　　　　　　　**ROANNE L. MANN**
　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**